PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff–Appellant–Cross–Appellee,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant–Third–Party–Plaintiff – Appellee – Cross–Appellant,

United States of America, Defendant,

United States Aviation Underwriters, Inc.; United States Aviation Insurance Group, Third–Party–Defendants–Cross–Appellees,

United States of America, by and through; United States Department of Transportation; Federal Aviation Administration; Frank B. Hall & Company, Third–Party–Defendants.

No. 875, Docket 92–6205, 92–6207.

United States Court of Appeals, Second Circuit.

Argued April 14, 1993.

Decided May 26, 1993.

Raymond T. Munsell (James W. Borkowski, of counsel, on the brief), Windels, Marx, Davies & Ives, New York City, for plaintiff-appellant-cross-appellee and third-party-defendants-cross-appellees.

Anne M. Tannenbaum (Milton H. Pachter and Arthur P. Berg, on the brief), New York City, for defendant-third-party-appellee-cross-appellant.

Before NEWMAN and WINTER, Circuit Judges, and CARMAN, Judge.*

CARMAN, Judge:

## I. BACKGROUND

Pan Am initiated this suit to recover damages it sustained on January 16, 1984, when an engine on one of its DC–10 aircraft ingested snow and ice while taxiing to its terminal at John F. Kennedy International Airport (JFK) in New York. The ingestion occurred when the aircraft's pilot applied the engines' reverse thrust in order to avoid an imminent collision with sand trucks operated by the Port Authority.

The district court conducted a four-day jury trial before granting the Port Authority's motion for judgment as a matter of law pursuant to FED.R.CIV.P. 50(a). 787 F.Supp. 312. The court heard testimony from several witnesses for the plaintiff and from an expert witness for the defendant. The trial court refused to qualify plaintiff's proposed witness, Robert M. McMullen, as an expert and therefore did not allow him to testify. (A–1088).

The testimony given by the parties' other witnesses and the evidence received by the court established several facts without contradiction. These facts may be summarized as follows: (1) on the day of the incident the taxiways and ramps at JFK had a thin coating of ice over compacted snow and ice (Jt.Exhib. 17); (2) a report entered in the Port Authority's operation log at 7:40 a.m., approximately one hour and twenty minutes before the incident, noted that taxiway Yankee between taxiways Echo and Foxtrot was "very slippery" and that the Port Authority's snow desk had been so notified (A–827, Pl.Exhib. 4, E–18); (3) the taxiways at issue appeared unsanded to witnesses who viewed the taxiways after the incident (A–678, 751);

(4) the aircraft received instructions to taxi on taxiway Yankee and yield the right of way to Port Authority sand trucks at the intersection of taxiways Yankee and Foxtrot and runway 4–Left (A–1125–26); (5) the Port Authority sand trucks were stopped on runway 4–Left on the side opposite taxiway Yankee when the aircraft approached and then suddenly accelerated into the aircraft's path (A–541–43, 955, 960–65); (6) the aircraft breaking system was operating normally at the time of the incident (A–529–30); (7) the pilot applied the aircraft's brakes to avoid colliding with the sand trucks, but the aircraft had no braking action due to ice on the taxiway (A–543, 966); (8) the pilot, Captain Bellows, used the engines' reverse thrust to stop the aircraft (A–966); and (9) the use of the reverse thrust caused engine number three to ingest snow and ice (A–969–70).

As to all other facts, the testimony received by the district court varied in two respects. First, the testimony of Captain Stephen Bellows and the deposition of First Officer John K. Piper, respectively the pilot and second in command, differed in regard to the direction from which the air traffic control instructions indicated the sand trucks would approach the intersection. Captain Bellows testified he believed the sand trucks would approach from runway 4–Left and Officer Piper stated in his deposition, which was read at trial, that he understood the sand trucks would approach from taxiway Foxtrot. (A–604, 607, 941, 944–45). Second, the testimony of defendant's expert witness, Mark K. Goodrich, contradicted the testimony of virtually all of plaintiff's witnesses who testified about the speed at which the aircraft approached the intersection. Whereas plaintiff's witnesses testified the aircraft was travelling at a speed of three to five miles an hour, Goodrich estimated the aircraft was travelling between twelve and twenty miles an hour based on the facts surrounding the incident. (A–543, 842, 852, 943, 964). Goodrich attributed the incident to the fact that the aircraft taxied at too fast a rate of speed. (A–818).

* Honorable Gregory W. Carman, of the United States Court of International Trade, sitting by designation.

At the close of Pan Am's case, the Port Authority moved for judgment as a matter of law pursuant to FED.R.CIV.P. 50(a). After finding Pan Am failed to make out a *prima facie* case against the Port Authority, the district court granted the Port Authority's motion and dismissed Pan Am's suit. (A–1115). In its bench ruling and Findings of Fact and Conclusions of Law, the district court emphasized that because the Pan Am crew knew about the taxiways' dangerous conditions and sand trucks, and received instructions to yield the right of way to the sand trucks, the aircraft's damage was not due to the Port Authority's negligence. (A–1113–15, 1135). Pan Am appeals from the district court's order granting the Port Authority's motion for judgment as a matter of law.

## II. CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

Pan Am contends the trial court erred in granting the Port Authority's motion for judgment as a matter of law for two reasons. First, Pan Am argues that it offered sufficient evidence to establish each element of its negligence claim against the Port Authority and, therefore, a clear question of fact for the jury existed. Pan Am maintains it clearly demonstrated that: (1) the Port Authority owed a duty of care in maintaining JFK's taxiways; (2) the Port Authority breached this duty by failing to sand the taxiways which it knew were covered by ice, or, in the alternative, by failing to close the taxiway; (3) the Port Authority's sand trucks accelerated into the path of the Pan Am aircraft and forced the pilot to use the reverse thrust, thereby causing the engine to ingest ice; and (4) the engine's damage was due to the Port Authority's negligent maintenance of the taxiways.

Second, Pan Am contends the district court erred in not allowing the jury to assess the question of whether the Port Authority breached a statutory duty owed to Pan Am. Pan Am asserts that such a duty arises from N.Y. COMP.CODES R. & REGS. tit. 21, § 1262.5 (1983), which states the following in pertinent part: "All ground self-propelled vehicles shall yield the right-of-way to any and all aircraft in motion, except emergency equipment which shall have tower clearance when responding to an alarm." According to Pan Am, because the Port Authority sand trucks attempted to accelerate into the aircraft's path and did not yield the right of way to the aircraft, the Port Authority breached the statutory duty imposed by N.Y. COMP.CODES R. & REGS. tit. 21, § 1262.5. As to this issue, Pan Am argues it presented enough evidence to establish the existence of a statutory duty and a breach thereof. Therefore, Pan Am maintains the district court improperly refused to allow the case to go to the jury.

In addition to challenging the trial court's grant of defendant's motion, Pan Am also argues the trial court erred in refusing to qualify Robert M. McMullen as an expert witness. Pan Am cites McMullen's experience as an air traffic controller and accident investigator to demonstrate his qualifications as an expert. As further evidence of McMullen's qualifications, Pan Am points to the fact that McMullen has served as an expert witness on behalf of the federal government and private parties in various federal trials. Because of his background, Pan Am asserts McMullen possessed the requisite knowledge, skill, experience, training and education to qualify as an expert under FED.R.EVID. 702.

### B. *Defendant*

The Port Authority contends the district court properly granted its motion for judgment as a matter of law for two reasons. First, the Port Authority argues Pan Am failed to establish a *prima facie* case of negligence against the Port Authority. The Port Authority asserts the evidence before the trial court did not demonstrate the Port Authority negligently maintained taxiway Yankee or was negligent in keeping the taxiway open on the day of the incident. According to the Port Authority, because Pan Am failed to show any unknown or unusual operating conditions on the day of the incident, Pan Am did not raise any issue that the Port Authority was obliged to or was negligent in failing to close taxiway Yankee.

The Port Authority also claims the evidence before the trial court did not demon-

strate the Port Authority negligently failed to sand taxiway Yankee. The Port Authority maintains that JFK's operation log indicates the taxiway was continuously sanded during the twenty-four hours prior to the incident and sanders were operating in the vicinity of the incident site on the morning of the incident. The Port Authority further argues that the sanding and plowing that occurred on the day of the incident conformed to a snow plan in effect at JFK. Because the Port Authority carried out these operations according to the snow plan, the Port Authority urges that it was not negligent.

The Port Authority's second main contention in support of the district court's decision is that because the Pan Am crew received instructions from the control tower to yield the right of way to the sand trucks and failed to follow the instructions, Pan Am did not raise a triable issue as to whether the Port Authority sand trucks violated N.Y.COMP. CODES R. & REGS. tit. 21, § 1262.5.

With respect to the witness issue, the Port Authority contends the district court did not commit error in refusing to qualify Pan Am's proposed expert, Robert M. McMullen. In light of the district court's broad discretion in qualifying proposed expert witnesses, the Port Authority urges that McMullen's disciplinary problems during his air traffic control training, inexperience as an accident investigator, and lack of familiarity with JFK's operational procedures all support the trial judge's decision to not qualify McMullen as an expert.

### III. DISCUSSION

#### A. *Judgment as a Matter of Law*

FED.R.CIV.P. 50(a)(1) sets forth the principles governing the district court's grant of judgment as a matter of law. As amended in 1991, this rule states the following:

> If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or

third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

FED.R.CIV.P. 50(a)(1). The amended rule 50(a)(1) replaces the former rule 50(a) which provided for directed verdicts. As indicated by the advisory committee on the 1991 amendments to Federal Rules of Civil Procedure, the amended rule does not change the standard which applied to directed verdicts. FED.R.CIV.P. 50(a)(1) advisory committee note on the 1991 amendments.

Because the directed verdict and judgment as a matter of law share a common standard, the interpretive rules that developed with respect to directed verdicts apply with equal force to judgments as a matter of law. Therefore, in reviewing a grant of judgment as a matter of law, "the court must resolve all issues of credibility in favor of the appellant." *Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d Cir.1991) (citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943); *National Auto Brokers Corp. v. General Motors*, 572 F.2d 953, 956 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979)). In addition, judgment as a matter of law is only proper "if the evidence points so strongly in favor of one party that a reasonable jury could reach but one conclusion, in favor of that party." *Id.* (citing *National Auto Brokers*, 572 F.2d at 956). "If the evidence presented raises a question such that reasonable men might reach different conclusions," judgment as a matter of law is improper. *Id.* In view of the evidence plaintiff presented to the district court, we find the district court erred in granting defendant's motion for judgment as a matter of law.

First, plaintiff introduced enough evidence from which the jury could have found the defendant negligently maintained JFK's runways and taxiways. The evidence adduced by plaintiff demonstrates the runways and taxiways were covered with a layer of ice over snow and patches of ice and were unsanded. *See* Jt. Exhib. 17. In addition, the fact that the aircraft ingested chunks of ice on taxiway Yankee further indicates a significant amount of ice build-up. Despite this

evidence, the district court appears to have reasoned that because the Port Authority warned the Pan Am crew of the snow and ice on the taxiways, the Port Authority properly discharged its duty to Pan Am. *See* A–1111–15.

The Port Authority's duty, however, encompassed more than an obligation to warn. As indicated by the Port Authority's own expert witness, in sufficiently dangerous circumstances an airport operator must close a taxiway. (A–828). Because plaintiff introduced evidence that would support a jury finding that conditions at the time of incident were sufficiently dangerous to require the Port Authority to close or at least sand the taxiways in question, the evidence did not so strongly favor the defendant that the jury could only find for the defendant. *See Fane*, 927 F.2d at 128.

Moreover, the conditions at the time of the incident do not appear to have been normal as the Port Authority contends. The presence of ice chunks on the taxiway, the lack of sanding, and slippery pavement seem to be dangerous and, perhaps, abnormal conditions. In any event, the evidence could clearly and reasonably support a jury conclusion that the Port Authority failed to properly maintain the taxiway. Therefore, the district court erred in granting the Port Authority's motion for judgment as a matter of law. *See id.*

Second, plaintiff introduced evidence that created a "legally sufficient evidentiary basis" from which the jury could have found the Port Authority negligently operated its sand trucks. For purposes of assessing the Port Authority's motion, we resolve all issues of credibility in Pan Am's favor and assume the aircraft was travelling at a speed of three to five miles an hour as stated by plaintiff's witnesses. *See id.* The evidence also indicated the sand trucks accelerated suddenly into the aircraft's path and the crew first applied the aircraft's brakes only after seeing the trucks speed into the aircraft's path. *See* A–541–43, 955, 960–65. Despite this evidence, the Port Authority asserts that because the control tower instructed the aircraft to yield the right of way to the sand trucks, the trucks' action was reasonable.

The Port Authority's position is without merit.

The instruction alone does not preclude liability occasioned by the operation of the Port Authority sand truck. Initially we note that there is no evidence in the record that the truck operators were even aware of the instruction. Even if the truck operators were aware of the instruction, the totality of the evidence, if believed by the jury, could support an inference that the truck operators negligently accelerated into the aircraft's path before the aircraft had an opportunity to stop. Contrary to the Port Authority's suggestion, the instructions would not permit the trucks to cut off the aircraft. Because this sequence of events would permit a jury to conclude the Port Authority negligently operated its trucks, we find the district court erred in granting the Port Authority's motion for judgment as a matter of law. Because we find the foregoing evidence could support a jury finding the Port Authority breached the duty of care it owed to Pan Am, we do not need to address whether the evidence presents a legally sufficient basis to find the Port Authority also breached a statutory duty imposed by N.Y. COMP.CODES R. & REGS. tit. 21, § 1262.5.

## B. *Admissibility of Expert Testimony*

FED.R.EVID. 702 guides the determination as to whether a witness qualifies as an expert. This rule reads as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In general, "[a] trial judge has broad discretion in applying the rule, and his actions will be sustained unless 'manifestly erroneous.'" *United States v. Roldan–Zapata*, 916 F.2d 795, 805 (2d Cir.1990), *cert. denied*, ––– U.S. –––, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991) (citations omitted); *see also Hamling v. United States*, 418 U.S. 87, 108, 94 S.Ct. 2887, 2903, 41 L.Ed.2d 590 *reh'g denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974).

**10**

We find that the district court's ruling with respect to Pan Am's proposed expert witness was not manifestly erroneous. The proposed expert never completed local air traffic control training, had little experience in large airports, and was entirely unfamiliar with ground procedures at JFK. (A–1089). In addition, the record indicates the witness worked as an accident investigator for the National Transportation Safety Board for only eighteen months (A–1089, 1103). Accordingly, we find sufficient grounds in the record to support the trial court's ruling pertaining to Pan Am's proposed expert witness, Robert M. McMullen, and affirm the ruling.

## IV. CONCLUSION

The district court's ruling refusing to qualify Robert M. McMullen as an expert is sustained. The district court's judgment in favor of the defendant Port Authority is reversed and the case is remanded for a new trial.