Fowler v. Town of Seabrook        CV-97-299        10/14/98
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Rosemary Fowler

        v.                                Civil No. 97-299-JD

Town of Seabrook, E. Russell Bailey,
Mark Eaton, Ralph Marshall,
and Werner Knowles

O R D E R

        Plaintiff, Rosemary Fowler, brings a civil rights action
alleging employment discrimination by the town of Seabrook and
several town officials and employees as the basis of her claims
under Title VII, 42 U.S.C.A. § 2000e (West 1994), and 42 U.S.C.A.
§ 1983 and § 1985 (West 1994).  Defendants move for summary
judgment on grounds that plaintiff cannot establish a prima facie
case of discrimination.  Defendants' motion (document no. 15) is
granted for the following reasons.


Standard of Review

        Summary judgment is appropriate only if the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party bears the initial burden of informing

the court of the basis for the motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). If the moving party meets its threshold obligation, the nonmoving party must establish specific facts, with record references, showing that there is a genuine dispute of material fact as to each issue for which the nonmoving party bears the burden of proof at trial. See id; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). For summary judgment analysis, the court construes the record in the light most favorable to the nonmoving party and indulges all reasonable factual inferences in its favor. See Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 870 (1st Cir. 1997).

Parties must include in memoranda supporting and opposing summary judgment "a short and concise statement of material facts, supported by appropriate record citations" to show the factual basis of a motion or objection. LR 7.2(b). Material facts are those that have the potential to affect the outcome of a claim under the governing law. Anderson, 477 U.S. at 248. "All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party." LR 7.2(b)(2). The following background facts are taken from the parties' properly supported factual statements construed in light of the applicable standards.

<u>Background</u>

Plaintiff Rosemary Fowler first worked for the town of Seabrook in 1984 as a part-time staff person in the recreation department. In that job, Fowler worked with children supervising game activities. She left in 1987 because of a dispute with her supervisor. During the spring of 1988, Fowler was hired by the town's parks commissioners to work on a seasonal basis to maintain the town's baseball fields. In March 1989, Fowler was elected to serve a three year term as one of three town parks commissioners who were paid seasonally to maintain the town's parks. She was re-elected in 1992.

During the time Fowler served as a parks commissioner, accusations were made about the veracity of her time sheets. Mark Eaton, who became manager of the public works department in June of 1994, was notified that Fowler was submitting time sheets for time she had not worked. Eaton remembers that Russ Bailey, the town manager, told him that Ralph Marshall, who was a parks commissioner with Fowler, had reported that Fowler was recording time that she did not work. Eaton looked into the matter as directed. He saw Fowler away from work at times she had recorded on her time sheets, as others had reported. Eaton said that Fowler was never disciplined for falsifying her time sheets because she was an elected official rather than a regular town

3

employee.

Fowler applied for other full and part-time positions with the town beginning in 1993. Although Warner Knowles, who was then head of the water department, denies it, Fowler contends that she applied in 1993 for a full-time custodian position. Fowler remembers that quite a few people applied and that the job was given to a nephew of the town secretary. In both 1994 and 1995, Fowler applied for winter employment with the town department of public works ("DPW"). For the winter of 1994, Eaton, manager of DPW, told Fowler that he had Ralph Marshall working but would let her know if he needed more help. The next winter, 1995, Fowler again asked Eaton for work when both Marshall and Forrest Carter, Fowler's fellow parks commissioners, were working for DPW, and was again told that nothing was available. In the spring of 1995, Fowler applied for a full time laborer position with the DPW, but was not hired. In September 1995, she applied for a full-time position in the town water department, but was not hired. She then unsuccessfully applied for town inspectors' jobs and two laborer jobs.

Warner Knowles testified in his deposition that he offered Fowler a part-time job with the water department at the end of one summer while she was a parks commissioner. The job entailed removing weeds from fire hydrants. Knowles said that Fowler

4

worked for a day or two and then told him that she did not want to work any more.

Lynn Willwerth, a woman, was hired in 1996 as an outdoor laborer, doing light-duty work, and worked for the town until 1998. Willwerth, unlike Fowler, is a member of the town's employees' union, and Fowler contends that she has had preferential treatment because of her relationship with Warner Knowles, superintendent of the water and sewer department. No other women were hired to work full time as laborers, although two young women were hired as part-time summer cemetery workers, first during high school and now during summer breaks from college. Both Warner Knowles and Forrest Carter testified in their depositions that Fowler was, in their estimation, qualified for town employment as a laborer. During the winter of 1997 - 1998, Eaton offered Fowler part-time work but cut her hours after his deposition was taken in this case. Ralph Marshall and Forrest Carter, Fowler's former co-commissioners, are both employed full time by the town.

Bailey, as Seabrook's town manager, has final hiring authority for the town. The department heads recommend, but do not hire, candidates for town employment. Department heads Eaton and Knowles each state in an affidavit that they considered "the incident involving Ms. Fowler's falsification of time sheets"

5

when reviewing applications for employment in their departments and "the incident is a factor which has prevented me in the past from recommending Ms. Fowler" for employment with the town. Bailey says in his affidavit: "The incident involving Ms. Fowler's falsification of time sheets has been taken into consideration by the Town each time Ms. Fowler applies for employment with the Town."

On January 3, 1996, Fowler filed a discrimination complaint with the New Hampshire Commission for Human Rights. After receiving a right to sue notification from the United States Equal Employment Opportunity Commission in March of 1997, Fowler filed suit in this court in June of 1997.

In her complaint, Fowler alleges four civil rights claims all arising from her attempts to find employment with Seabrook. In count one, she alleges gender discrimination in employment under Title VII against the town and individual defendants. Count two is a claim against the individual defendants of conspiracy to interfere with her civil rights and to obstruct justice pursuant to 42 U.S.C.A. § 1985(2). Count three alleges that the individual defendants failed to prevent the conspiracy and is brought pursuant to 42 U.S.C.A. § 1986. Count four is a claim against the town for violation of Fowler's equal protection rights brought pursuant to 42 U.S.C.A. § 1983.

<u>Discussion</u>

Defendants move for summary judgment asserting that plaintiff cannot make a <u>prima</u> <u>facie</u> case of employment discrimination and has no facts to support her allegations of conspiracy. Alternatively, defendants contend plaintiff will not be able to show that their proffered reasons for not hiring her, falsification of her time sheets and lack of qualifications for particular jobs, are pretexts for discrimination. Plaintiff maintains that she was qualified for each job for which she applied and that she was not hired because she is a woman. She also contends that defendants' deposition testimony supports her conspiracy claims.

A. <u>Gender Discrimination in Hiring</u>

Title VII and section 1983 prohibit, among other things, discrimination against a job applicant because of her gender. 42 U.S.C.A. § 2000e-2(a)(1); 42 U.S.C.A. § 1983. When a plaintiff lacks direct evidence of a defendant's discriminatory intent in an employment decision, she may carry her burden of proof with circumstantial evidence through a sequential three-step process.[1]

---

[1]Defendants have not raised a question as to whether Title VII provides an exclusive remedy for employment discrimination. <u>See</u> <u>Madon v. Laconia School District</u>, 952 F. Supp. 44, 48 (D.N.H. 1996). As the parties have not suggested otherwise, the court assumes that the same analysis of discriminatory animus applies

See Carey v. Mt. Desert Island Hospital, Nos. 97-1661, 97-1688, 1998 WL 472058, at *1 (1st Cir. Aug. 18, 1998).

At the first step, plaintiff must establish a prima facie case to create a presumption that defendants unlawfully discriminated against her. See St. Mary's Honor Ctr., 509 U.S. at 506. Once a presumption arises from a successful prima facie case, at the second step, defendants must produce a nondiscriminatory explanation to rebut plaintiff's prima facie case. Id. Third, plaintiff must prove that defendants' explanation is pretextual and that the real motivation for defendants' adverse employment decision was discriminatory. Id. at 511. Plaintiff retains the burden of proving discrimination throughout the process despite the shifting burden of production. Id. at 507.

1. Prima Facie Case

To make a prima facie case of disparate treatment based on gender, plaintiff must show that she was treated differently than

---

to both plaintiff's Title VII and section 1983 claims. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993). In contrast, while section 1983 permits claims against individual state actors, it is well-settled in this district that no individual liability exists under Title VII. Preyer v. Dartmouth College, 968 F. Supp. 20, 24 (D.N.H. 1997). Defendants, however, have not raised the issue of plaintiff's Title VII claims against individual defendants.

similarly situated male applicants.  See Molloy v. Blanchard, 115 F.3d 86, 91 (1st Cir. 1997).  "The burden of establishing a prima facie case of disparate treatment is not onerous.  The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Stated in other terms, plaintiff must show that she was (1) a member of a protected class, (2) qualified for the job for which she applied, (3) not hired, and (4) that the employer hired "someone of roughly equivalent qualifications" to perform the job for which she applied.  Byrd v. Ronayne, 61 F.3d 1026, 1030 (1st Cir. 1995) (quotation omitted).

Rosemary Fowler is a woman, and she has established that she was not hired for several jobs available with the town.  She contends that her experience working as a town parks commissioner qualified her for the laborer and janitorial jobs for which she applied.  Evidence in the record corroborates her qualifications for at least some of the jobs for which she applied.  It also appears more likely than not that the applicants who were hired in some of the jobs had roughly equivalent qualifications to plaintiff's.  Thus, plaintiff has met her burden of establishing

9

a <u>prima</u> <u>facie</u> case.

2. <u>Defendants' Explanation</u>

Defendants contend that plaintiff was not recommended or hired because she was known to falsify her time sheets when she worked as a town parks commissioner. In addition, defendants point to plaintiff's decision to stop a part-time job with the town water department after she had worked only a day or two. Defendants assert that honesty and a good work ethic are necessary qualifications in the jobs for which plaintiff applied and that her record indicated she lacked those qualities.

In support of their explanation, defendants Mark Eaton and Warner Knowles say that they had personal knowledge of plaintiff's falsification of her time sheets and that they did not recommend her in part because of that issue. Defendant Russ Bailey says that the issue of plaintiff's time sheets was reported to him, that he had "concerns" about her honesty, integrity, and work ethic, and that those concerns were factors in deciding not to hire her.

Defendants also argue that some of the positions for which plaintiff applied required skills that she did not have, and that some of the applicants hired had more appropriate skills than she had. Defendants dispute that plaintiff applied for the position

of town janitor in 1993, but contend that the applicant who was hired was more qualified than plaintiff because he was trained in masonry and concrete work.  Defendants do not, however, establish that training in masonry and concrete work was a necessary or even advantageous skill for the janitorial position.  With respect to winter work during the 1994-1995 season, defendants contend that Marshall and Carter, plaintiff's fellow parks commissioners who were hired for winter work, had prior carpentry experience that qualified them to build an office being constructed that winter.  Defendants also suggest that Ralph Marshall was hired because he was a "squeaky wheel" requesting work every day in the winter while Rosemary Fowler asked only once or twice.

3.  <u>Evidence of Pretext</u>

As defendants have presented evidence of a nondiscriminatory reason for not hiring plaintiff, the presumption arising from the <u>prima</u> <u>facie</u> case is extinguished.  Plaintiff must now show that defendants' stated reason was not the real reason she was not hired and that the true explanation is that she was not hired because she is a woman.  <u>See</u> <u>Carey</u>, 1998 WL 472058 at *2.  In other words, she must show that defendants' explanation is a pretext for unlawful discrimination.

11

Plaintiff contends that defendants have not proven that their accusations about her time sheets are true. She points to a lack of other witnesses or evidence to support their accusations. She notes that she was never reprimanded, punished, or penalized by the defendants for the time sheet issue.[2] Plaintiff states in her affidavit that she did not "pad" her hours. If plaintiff is right and defendants are wrong, then defendants refused to hire plaintiff based on false rumors and misinformation – not necessarily because she is a woman. In that case, their decision was mistaken but not necessarily discriminatory.

Assuming, as the parties seem to do, that falsification of time records is a legitimate reason not to hire an applicant for the town jobs in question, plaintiff must show that it was not the real reason she was not hired.[3] Plaintiff must be able to

---

[2]Deposition testimony submitted with defendants' motion indicates that some of her allegedly falsified time sheets may have been changed or discarded by those who doubted their accuracy and that Mark Eaton did not believe he had authority to address the issue because Fowler was working as an elected official.

[3]Plaintiff does not contend that defendants' explanation is irrelevant to the jobs for which she applied, nor does she suggest that honesty in submitting time sheets was not an appropriate basis for the town's hiring decisions. She has not argued that other town employees were permitted to submit time sheets for hours they did not work or that others, who also padded their hours, were hired for town jobs. While Forrest Carter said in his deposition that Ralph Marshall was also

12

point to evidence in the record to establish at least a triable issue as to whether defendants believed she falsified time records and did not hire her for that reason.[4]  The material question is not whether the accusations were true, but whether defendants believed them to be true and did not hire plaintiff for that reason.

Defendants' information about plaintiff's work habits and time sheets, as demonstrated in the record here, was somewhat circumstantial, but it was not unfounded.  Based on deposition

concerned about Carter's hours, nothing apparently came of Marshall's concerns.  Thus, it appears to be undisputed that defendants stated reason for not hiring her would have been an appropriate and legitimate reason, if it were the real reason.

[4]If a plaintiff were able to show that a defendant's stated reason for an adverse employment decision is not believable, there might also be a basis for inferring discriminatory intent:

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity [i.e. lying]) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will <u>permit</u> [but not require] the trier of fact to infer the ultimate fact of intentional discrimination, and, . . . upon such rejection, no additional proof of discrimination is <u>required</u>."

<u>DeNovellis v. Shalala</u>, 124 F.3d 298, 308 (1st Cir. 1997) (quoting <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 511).

testimony submitted for summary judgment, rumors were circulating in Seabrook that plaintiff submitted time sheets for days she did not work. Plaintiff's fellow parks commissioner, Forrest Carter, said in his deposition that he knew of the issue because the third parks commissioner, Ralph Marshall, was concerned about Fowler's time sheets and made insinuations about Carter's hours as well. Carter testified that Marshall ripped up plaintiff's sheets and refused to sign the payroll that included hours he thought were falsified.[5]

Marshall testified that plaintiff submitted eight hours for "more or less every Friday" when he knew she was not working. Marshall also said that Carter erased some of plaintiff's contested hours. When Bailey asked Eaton to investigate reports about plaintiff, Eaton looked into circumstances pertaining to a disputed time period and was convinced that at least on that occasion plaintiff submitted a time sheet for days she did not work. Warner Knowles believed, based on his own knowledge, in addition to the rumors about her, that plaintiff was on vacation and did not work on two particular days for which she submitted time sheets, because he "didn't see her around town and everybody said she was upcountry." Plaintiff has submitted no evidence to

---

[5]Two of the three parks commissioners had to sign the payroll sheet consisting of their time entries for each week for any of them to be paid.

refute defendants' version of what they believed she had done.

Based on the record presented for summary judgment, plaintiff has not shown a genuine factual dispute about defendants' stated explanation for not hiring her. Although she disputes the truth of the accusations against her, she has not demonstrated a factual dispute about what the defendants believed she had done. Accordingly, plaintiff has not shown a factual issue for trial as to whether defendants' stated reason for not hiring her was a pretext for discrimination.

4. Other Evidence of Discriminatory Intent

As plaintiff has not demonstrated a triable issue concerning whether defendants' stated reason for not hiring her was pretextual, it is not necessary to move to the second step and consider evidence of defendants' discriminatory intent. Nor does plaintiff present such strong evidence of discrimination as to undermine defendants' stated reason for not hiring her.

Plaintiff's other evidence of defendants' discriminatory animus toward her consists of Ralph Marshall's personal belief that women deteriorate faster in outdoor work than men and Forrest Carter's view that Russ Bailey listened to Marshall when making hiring decisions. Plaintiff also points to Carter's opinion that Russ Bailey took the wrong advice and should have

15

hired plaintiff.

Carter testified, however, that he never heard supervisors of town departments, Bailey, Eaton, or Knowles, express a negative opinion about women employees. The record establishes that a woman, Lynn Willwerth, was hired as an outdoor laborer in the water and sewer department. Plaintiff offers no evidence, beyond Carter's unsubstantiated opinion, that Bailey did not hire her based on Marshall's personal opinions rather than because he believed she had falsified her time sheets. Thus, even if plaintiff were able to show that defendants' stated explanation was pretextual, the additional evidence she offers would move her no closer to showing a triable issue of discrimination.

As no triable issue exists on plaintiff's Title VII or section 1983 claims, defendants are entitled to summary judgment.

B.  Claims Brought Under 42 U.S.C.A. § 1985(2) and § 1986

Plaintiff alleges that defendants conspired to prevent her from obtaining employment with the town and to obstruct the New Hampshire Commission on Human Rights investigation for the purpose of denying her equal protection of law as prohibited by section 1985(2). She also alleges that defendants neglected to prevent the conspiracy in violation of section 1986. Defendants move for summary judgment saying:

> There are no facts to support any of Plaintiff's conspiracy theories. As Plaintiff's deposition demonstrates, her conspiracy theory is based upon an alleged meal shared by some of the Defendants at the Surf and Turf Restaurant.

In her objection, plaintiff continues to rely on testimony that the defendants ate together, although the statements by defendant Eaton, which she cites, deny that any material discussion of her case occurred. She explains that Eaton has recently expressed concern about telling the truth in her case for fear of being terminated by Bailey.

The parties have not addressed the question of whether plaintiff's claims, apparently based on the second clause of section 1985(2), would survive the demise of her discrimination claims. See, e.g., Kush v. Rutledge, 460 U.S. 719 (1983); Griffin v. Breckinridge, 403 U.S. 88 (1971); see also Portman v. County of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993); Puglise v. Cobb County, 4 F. Supp.2d 1172, 1181 (N.D. Ga. 1998); Graves v. United States, 961 F. Supp. 314, 319 (D.D.C. 1997). Even if plaintiff's conspiracy claims survive as a matter of law, plaintiff has not demonstrated in this record a triable factual issue with respect to the existence of a conspiracy, as she has alleged. An absence of evidence of a conspiracy dooms plaintiff's claim despite her allegations that Mark Eaton feared reprisal if he told the truth. Without an actionable conspiracy,

17

defendants cannot be liable under section 1986 for failure to prevent any of the wrongs of a conspiracy. Defendants are entitled to summary judgment on plaintiff's section 1985(2) and section 1986 claims.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment (document no. 15) is granted. The clerk of court is directed enter judgment accordingly and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

October 14, 1998

cc: James H. Gambrill, Esquire
    William G. Scott, Esquire

18